UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x

JO-ANNE RUGGERIO,

               Plaintiff,                                    Memorandum and Order

                                                      12 Civ. 100

     - against -

DYNAMIC ELECTRIC SYSTEM INC..
ANZELM KRYSA, JIM ROSTKOWSKI, and
CARL BALZOFIORE,

               Defendants.
-------------------------------------------------------x

GLASSER, United States District Judge:

.       Plaintiff, Jo-Anne Ruggerio ("Ruggerio" or "plaintiff"), commenced this action

against defendants Dynamic Electric System Inc. ("Dynamic"), Anzelm Krysa ("Krysa"),

Jim Rostkowski ("Rostkowski"), and Carl Balzofiore ("Balzofiore"), alleging sexual

harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title

VII"), 42 U.S.C. § 2000e et seq., The New York State Human Rights Law ("NYSHRL"),

N.Y. Exec. Law § 296, et seq. (McKinney 2010), and the New York City Human Rights

Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101.  On February 7, 2012, Dynamic and

Krysa (the "Dynamic defendants") moved to dismiss the Complaint for failure to state a

claim, pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]  In the alternative, the

---

[1] The Dynamic defendants do not specify which provision of Rule 12(b) is grounds for their
motion.  Although docketed as a "Motion to Dismiss for Lack of Jurisdiction," presumably
pursuant to Rule 12(b)(1), the Court reads the Dynamic defendants' memorandum of law as
arguing plaintiff fails to state a federal claim upon which relief can be granted, pursuant to Rule
12(b)(6) and that, because plaintiff has failed to state a federal claim, the Court lacks pendent
jurisdiction over plaintiff's state law claims.  This also appears to be plaintiff's understanding of
the motion.  See Plaintiff's Memorandum of Law in Opposition to the Dynamic Defendants'

Dynamic defendants argue that summary judgment should be granted pursuant to Federal Rule of Civil Procedure 12(d) because plaintiff executed a waiver and release of her claims. On March 2, 2012, defendant Rostkowski also moved to dismiss the Complaint pursuant to Rule 12(b)(6) or, in the alternative, for summary judgment pursuant to Rule 12(d). Balzofiore has not made a motion. For the following reasons, the motions are granted in part and denied in part.

## BACKGROUND

The following facts are undisputed, unless otherwise noted. Dynamic is an electrical contracting and engineering company located in Brooklyn, New York. Compl. ¶ 7. Plaintiff alleges that Dynamic owns and operates a number of subsidiaries, including Dynamic Energy Group, Inc. ("DEGI") and Dynamic Mechanical. Id. ¶ 9. Kryza is the Chairman of Dynamic, Rostkowski is the Vice President of DEGI, and Balzofiore is the owner or officer of Dynamic Mechanical. Id. ¶¶ 10-12 Plaintiff alleges that these corporations operated as a single enterprise. Id. ¶ 13.

Plaintiff was hired on August 4, 2008 as a Field Administrator with Dynamic Electric System, Inc. Id. ¶¶ 16-18. In that capacity, she was assigned to a work site in Staten Island, where defendants were constructing the Charleston Bus Depot for the New York City Transit Authority. Id. ¶ 19. Plaintiff alleges she was subjected to daily sexual harassment and discrimination at that site, including: being called derogatory sexual names, such as "bitch" or "cunt"; being told to perform sexual acts, such as "suck dick" or "strap on a dildo"; and receiving "Post-it" notes on her computer with obscene

Motion for Summary Judgment ("Pl.'s 1st Mem.") (Dkt. No. 11-6) at 4-6 (arguing plaintiff has met the pleading standard relevant to a 12(b)(6) motion).

and threatening anonymous messages.[2]  Id. ¶ 20.  She alleges many of these acts were witnessed by managerial staff and supervisors, who took no action or who teased her about having a "secret admirer."  Id. ¶ 22.  She also made verbal complaints to Rostkowski and Balzofiore, who took no action.  Id. ¶¶ 21-22.

In September, 2009, Ruggerio filed a grievance with her union, the International Brotherhood of Electrical Workers ("IBEW"), but the harassment continued.  Compl. ¶¶ 24-25.  In January 2010, defendants terminated Ms. Ruggerio's employment, citing a lack of work.  Compl. ¶ 26.  Approximately one year later, in January 2011, plaintiff continued to pursue her grievance with the IBEW.  See Compl. ¶ 28; Declaration of Kelly C. Spina dated Mar. 2, 2012 ("Spina Decl.") Ex. A (Plaintiff's EEOC charge, declaring, under penalty of perjury, that plaintiff made written and verbal complaints to the IBEW in January 2011 regarding the sexual harassment she had suffered).  Plaintiff alleges that in response to her ongoing complaints, defendants retaliated against her in January 2011 by "respon[ding] to telephone inquiries for an employment reference for me . . . [with] false and derogatory statements that I was fired because I was 'blowing the guys on the job site.'"  See Affidavit of Plaintiff dated February 21, 2012 ("Pl.'s 1st Aff.") (Dkt. No. 11-1), ¶ 7; see also Compl. ¶ 28.

Beginning in January 2011, the parties sought to settle plaintiff's claims.  By a letter dated January 12, 2011, the IBEW sent Dynamic a settlement offer, signed by the plaintiff.  See Affidavit of Anzelm Krysa dated Feb. 7, 2012 ("Krysa Aff."), Ex. A (Letter

---

[2] Plaintiff alleges the messages included statements such as: "I want you to lick my balls;" "I want to suck your pussy;" "Do you have blond hair on your cunt or do you shave it;" "I want to pull on your braids while you blow me;" "I wanna fuck you so bad my balls hurt;" and "Do you like anal sex?"  Compl. ¶ 20(b).

to Krysa dated January 12, 2011). This offer was never accepted by Dynamic. <u>See id</u>; Pl.'s 1st Aff. ¶ 10.

By a letter dated February 18, 2011, Krysa, acting on behalf of Dynamic, sent plaintiff a Letter Agreement and Release. <u>See</u> Krysa Aff. Ex. B (the "Letter Agreement") & C ("the Release"). The Letter Agreement stated "you are eligible to receive the severance benefits described in this letter ("Letter Agreement") if you will sign and return the Letter Agreement <u>and</u> Attachment A ("Release") to me by March 19, 2011 and do not revoke your acceptance." <u>Id.</u> Ex. C (emphasis in original). Plaintiff signed the Release on April 6, 2011, more than two weeks after the March 19, 2011 deadline. <u>Id.</u> Ex. C; Pl.'s Rule 56.1 Statement ¶ 4. Plaintiff never signed the Letter Agreement.

The Release stated, in relevant part:

> In consideration of the Severance Pay and the loan forgiveness described in the Letter Agreement, which you acknowledge you would not otherwise be entitled to receive, you hereby fully, forever, irrevocably and unconditionally release, remise and discharge the Company, and all of the following: its officers, directors, stockholders, corporate affiliates, subsidiaries, parent companies, agents and employees (each in their individual and corporate capacities) . . . (hereinafter the "Released Parties") from any and all claims, grievances, charges, complaints, demands, actions, causes of action, suits, rights . . . of every kind and nature that you ever had or now have against the Released Parties, including but not limited to, any and all claims arising out of or relating to your employment with and/or separation from the Company, including, but not limited to, all claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e <u>et seq.</u> . . . all claims under the New York Human Rights Law, N.Y. Exec. Law Sec. 290 <u>et seq.</u>, . . . and any claim or damage arising out of your employment with and/or separation from the Company (including a claim for retaliation) under any common law theory or any federal, state or local statute or ordinance not expressly referenced above.

Id.  In exchange for the release of her claims, Dynamic committed to: (1) pay Ruggerio "the sum of $3,120.00 less all applicable taxes and withholdings"; and (2) forgive "the $3,000 personal loan that you have taken from the Company,[3] which as of February 18, 2011 has the outstanding balance in the amount of . . . $2,100.00."  Id. Ex. B, ¶ 3 (emphasis in original).

Plaintiff alleges that defendants did not forgive her loan or make the promised severance payment.  See Pl.'s 1st Aff, ¶ 14.  By a letter dated June 13, 2011, plaintiff wrote to the Dynmaic defendants, stating that she did not consider the Letter Agreement and Release binding.  See Declaration of Alan Serrins dated February 21, 2012 ("Serrins Decl.") Ex. 3.  By a letter dated July 11, 2011, Dynamic mailed a check for $1,876.64 to plaintiff.  See Krysa Aff. Ex. E; Plaintiff's Statement Pursuant to Rule 56.1 ("Pl.'s R. 56.1") ¶ 11.  The Dynamic defendants allege this amount represented $3,120.00, less applicable tax withholdings, as promised in the Letter Agreement.  Dynamic Defendants' Statement of Material Facts ("Dynamic R. 56.1") ¶ 11.  By an email dated July 15, 2011, plaintiff rejected the check, reiterating to the Dynamic defendants that she considered the Release "null and void."  Serrins Decl. Ex. 4.

On September 22, 2011, plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC").  See Krysa Aff. Ex. F.  On November 23, 2011, the EEOC issued plaintiff a "right to sue" letter.  Compl. ¶ 3.  On January 9, 2012, plaintiff filed her Complaint.

---

[3] During plaintiff's employment, on November 25, 2009, she received a personal loan from Dynamic for $3,000 and authorized Dynamic to withhold $150.00 per week from her paycheck until the money was repayed.  See Krysa Aff. Ex. D.

## JURISDICTION

This Court has original jurisdiction over plaintiff's Title VII claims. The Court also has supplemental jurisdiction over plaintiff's state law claims. Federal courts have supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). A state law claim forms part of the same controversy if the state and federal claim "derive from a common nucleus of operative fact." United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966). Here, the parties and alleged events and injuries that are grounds for plaintiff's federal claims are identical to those of plaintiff's state law claims.

## DISCUSSION

### I.  Standard of Review

Defendants seek dismissal under Rule 12(b)(6) or, in the alternative, summary judgment pursuant to Rule 12(d). If, on a Rule 12(b)(6) motion, "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R. Civ. P. 12(d). As indicated by the word 'must,' "the conversion of a Rule 12(b)(6) motion into one for summary judgment under Rule 56 when the court considers matters outside the pleadings is 'strictly enforce[d]' and 'mandatory.'" Global Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 155 (2d Cir. 2006) (quoting Amaker v. Weiner, 179 F.3d 48, 50 (2d Cir. 1999); Goldman v. Belden, 754 F.2d 1059, 1066 (2d Cir. 1985)). However, a district court may also, at its discretion, exclude the

extraneous material and construe the motion as one under Rule 12(b)(6).  <u>Friedl v. City of New York</u>, 210 F.3d 79, 83 (2d Cir. 2000).

In making their motions, defendants submitted material extraneous to the Complaint—including, among other things, the Release.  Although the Release is briefly referred to in the Complaint, <u>see</u> Compl. ¶ 28(a), "[a] mere passing reference or even references . . . to a document outside of the complaint does not, on its own, incorporate the document into the complaint itself."  <u>Williams v. Time Warner Inc.</u>, 440 F. App'x 7, 9 (2d Cir. 2011) (summary order) (citation omitted); <u>see also</u> <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 153 (2d Cir. 2002) (noting the complaint must heavily rely upon the document's "'terms and effect'" to be considered "'integral' to the complaint" (quoting <u>Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.</u>, 62 F.3d 69, 72 (2d Cir. 1995))).  Consequently, the Dynamic defendants concede that portion of their motion relying upon the Release should be deemed a motion for summary judgment.  <u>See</u> Memorandum of Law in Support of Defendants Dynamic and Krysa's Motion to Dismiss ("Dynamic Mem.") (Dkt. No. 7) at v n.1.  The parties' dispute is largely a matter of contract interpretation and the Court is not persuaded that additional discovery would be relevant.  Therefore, to the extent defendants' motions rely upon the release or other extraneous material, the motion will be converted to one for summary judgment.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  As an initial matter, the moving party has the burden of demonstrating that no genuine dispute of material fact exists for trial.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538

(1986).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).

Once the moving party has met this burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.'"  Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002) (emphasis in original) (quoting Matsushita, 475 U.S. at 586-87).  "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it."  Fed. R. Civ. P. 56(e).

The Court is compelled to draw all reasonable inferences in favor of the nonmoving party, Matsushita, 475 U.S. at 586, and a genuine dispute exists if a reasonable jury could find in favor of the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).  However, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Anderson, 477 U.S. at 249–50 (citations omitted).  "[T]he mere existence of some alleged factual dispute between the parties" alone will not defeat

a properly supported motion for summary judgment.  Id. at 247–48 (emphasis in original).  "Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth 'concrete particulars' showing that a trial is needed."  R.G. Grp., Inc. v. Horn & Hardart Co., 751 F.2d 69, 77 (2d Cir. 1984) (quoting S.E.C. v. Res. Automation Corp., 585 F.2d 31, 33 (2d Cir. 1978)).

## II.     Plaintiff's Claims Against the Individual Defendants

### A.  Summary Judgment is Granted as to Plaintiff's Title VII Claims Against the Individual Defendants

As an initial matter, defendants' motions for summary judgment are granted as to plaintiff's Title VII claims against Krysa, Rostkowski, and Balzofiore.  It is well-settled that individuals are not subject to liability under Title VII.  See, e.g., Mandell v. Cnty. of Suffolk, 316 F.3d 368, 377 (2d Cir. 2003) (affirming dismissal of Title VII claims "because under Title VII individual supervisors are not subject to liability") (citations omitted); Tomka v. Seiler Corp., 66 F.3d 1295, 1313 (2d Cir. 1995), abrogated on other grounds by Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998) ("[I]ndividual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII.").

### B.  Rostkowski's Motion for Summary Judgment on Plaintiff's NYSHRL and NYCHRL Claims Must be Denied

Defendant Rostkowski seeks summary judgment on plaintiff's NYSHRL and NYCHRL claims, arguing that plaintiff has failed to adequately plead an "integrated enterprise theory" as against DEGI and therefore plaintiff has failed to state a claim against Rostkowski because he was Vice-President of DEGI and not plaintiff's "employer".  Rostkowski Mem. at 9.  In support, Rostkowski has submitted an affidavit,

stating DEGI is a subcontractor of Dynamic and neither he nor DEGI were involved in Dynamic's decision to hire or fire plaintiff. Affidavit of James Rostkowski dated February 29, 2012 ¶¶ 3, 6.

Unlike Title VII claims, individuals may be held liable under the NYSHRL and the NYCHRL. See Feingold v. New York, 366 F.3d 138, 158-58 (2d Cir. 2004) (affirming individual defendants may be personally liable under the NYSHRL and NYCHRL). However, the NYSHRL and NYCHRL are not a "general civility code," Williams v. N.Y. City Housing Auth., 61 A.D.3d 62, 79, 872 N.Y.S.2d 27 (1st Dep't 2009), and claims may only be brought against: (1) employers with an ownership interest or the power to make personnel decisions, Patrowich v. Chemical Bank, 63 N.Y.2d 541, 542, 483 N.Y.S.2d 659 (1984) (per curiam); or (2) individuals who aid or abet the harassment, Feingold, 366 F.3d at 158 (citing Tomka, 66 F.3d at 1295 see also N.Y. Exec. Law § 296(6) ("It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."). "The same standards of analysis used to evaluate aiding and abetting claims under the NYSHRL apply to such claims under the NYCHRL because the language of the two laws is 'virtually identical.'" Feingold, 366 F.3d at 158 (quoting Dunson v. Tri-Maintenance & Contractors, Inc., 171 F. Supp. 2d 103, 113-14 (E.D.N.Y. 2001) (citations omitted); see N.Y.C. Admin. Code § 8-107(6) ("Aiding and abetting. It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so.").[4]

---

[4] With respect to aiding and abetting liability, the Court is mindful there are conflicting interpretations of § 296(6) among state and federal courts. See Patane v. Clark, 435 F. Supp. 2d 306, 312-13 (S.D.N.Y. 2006), rev'd on other grounds, 508 F.3d 106 (2d Cir. 2007) (collecting

Here, plaintiff alleges that Rostkowski personally participated in the conduct giving rise to plaintiff' NYSHRL and NYCHRL hostile work environment claims. Plaintiff alleges Rostkowski was aware of and witnessed the harassing conduct, that she made complaints to him but he took no action, and in response to the sexually threatening messages on her computer, he teased her that she had a "secret admirer." See Compl. ¶¶ 21-22.  Plaintiff also submitted an affidavit stating Rostkowski participated in the harassment by making "derogatory statements offensive to women in my presence, such as a comment relating to the use of a 'dildo'." Pl.'s Aff. ¶ 5.  Plaintiff has sufficiently demonstrated material issues of fact exist as to whether Rostkowski aided and abetted the sexual harassment, pursuant to § 296(6) and § 8-107(6), and Rostkowski's motion for summary judgment must be denied as to plaintiff's NYSHRL and NYCHRL claims.

### III.    Plaintiff's Title VII Claims against Dynamic

Regarding plaintiff's Title VII claims against Dynamic, defendants argue these claims are barred by the statute of limitations.  As a precondition to filing a Title VII claim in federal court, a plaintiff must first exhaust her administrative remedies by filing a complaint with the EEOC within 300 days of the alleged discriminatory act, obtaining a right to sue letter, and filing an action within 90 days of receipt of that letter.  See 42 U.S.C. § 2000e−5(e)−(f); Deravin v. Kerik, 335 F.3d 195, 200 (2d Cir. 2003) ("As a precondition to filing a Title VII claim in federal court, a plaintiff must first pursue

---

cases, including divergent decisions by the New York Appellate Division First and Second Departments).  Nevertheless, the majority of federal district courts in New York have followed the Second Circuit's decision in Tomka, interpreting § 296(6) to hold individuals personally liable for discriminatory conduct and "until the Second Circuit revisits the issue, Tomka is the law in this circuit."  Tully−Boone v. North Shore−Long Island Jewish Hosp. Sys., 588 F.Supp.2d 419, 426−427 (E.D.N.Y. 2008); see also Feingold, 366 F.3d at 161 (recognizing disagreement in state courts but adhering to Tomka).

available administrative remedies and file a timely complaint with the EEOC."). "This statutory requirement effectively acts as a statute of limitations, and Title VII claims are barred by the failure to file a timely charge." Hill v. Citibank Corp., 312 F. Supp. 2d 464, 472 (S.D.N.Y. 2004) (citing Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 712 (2d Cir. 1996)). Plaintiff filed her complaint with the EEOC on September 22, 2011, which is more than 300 days after she was terminated, in January 2010.

Nevertheless, plaintiff argues that her claims are timely because a discriminatory act occurred within the statute of limitations. This act was, apparently, the negative employment reference in January 2011 (the "January 2011 reference"), in which an unnamed Dynamic employee responded to a telephone inquiry by stating that plaintiff had been fired because she was "blowing the guys on the job site." Declaration of Ann Macadangdang dated March 15, 2012, Ex. 1, ¶ 8; Plaintiff's Memorandum of Law in Opposition to Rostkowski's Motion to Dismiss ("Pl.'s 2d Mem.") at 12. In her Complaint, plaintiff characterized the January 2011 reference as an act of retaliation. See Compl. ¶ 28. Plaintiff now argues it was also a continuation of the sexual harassment she suffered on the job and therefore her hostile work environment claim is timely. The Court considers each argument in turn.

A. Plaintiff's Title VII Retaliation Claim is Timely

Plaintiff alleges that in response to her complaints to the IBEW after her termination, defendants "subjected plaintiff to additional retaliatory treatment," including "blacklisting" her from the industry and the January 2011 reference. Compl. ¶ 28. These acts occurred within the statute of limitations and plaintiff included these allegations in her timely EEOC charge. See Spina Decl. Ex. A. It is well-established that

providing a negative job reference for a former employee can constitute unlawful

retaliation under Title VII.  See Robinson v. Shell Oil Co., 519 U.S. 337, 117 S. Ct. 843,

136 L. Ed. 2d 808 (1997) (holding that a negative employment reference can constitute

retaliation); Jute v. Hamilton Sundstrand Corp., 420 F.3d 166 (2d Cir. 2005) (giving

negative references in retaliation for protected activity considered retaliation in

violation of Title VII).  For these reasons, plaintiff's Title VII retaliation claim is timely

and summary judgment on that ground is denied.

### B.  Plaintiff's Title VII Hostile Work Environment Claim is Untimely

Plaintiff also argues that her hostile work environment claim is timely because

the January 2011 reference was sufficiently sexually offensive as to constitute a

continuation of the sexual harassment she experienced while she was employed.  See

Pl.'s 2d Mem. at 12.  "[I]n hostile work environment cases, an offensive incident within

the [300 day] limitations period permits consideration of an incident preceding [that]

period . . . if the incidents are sufficiently related."  McGullam v. Cedar Graphics, Inc.,

609 F.3d 70, 77 (2d Cir. 2010) (internal quotation omitted).

> [i]t does not matter, for purposes of the statute, that some of
> the component acts of the hostile work environment fall
> outside the statutory time period. Provided that an act
> contributing to the claim occurs within the filing period, the
> entire time period of the hostile environment may be
> considered by a court for the purposes of determining
> liability.

Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117, 112 S. Ct. 2061, 153 L. Ed. 2d

106 (2002).  This requires an "individualized assessment of whether incidents and

episodes are related."  McGullam, 609 F.3d at 77.  Factors may include the nature,

frequency, and severity of the acts, the length of time elapsed between the timely and

untimely acts, and whether it was the same harasser who committed the acts.  Id. at 77-78.

Here, plaintiff's untimely allegations are that between 2008-2010 she suffered daily verbal and written harassment at her work site, including being called derogatory and obscene names, being asked to perform sexual acts, and receiving obscene and threatening notes describing sex acts.  See Compl. ¶ 20.  The Court assumes, without having to decide, that the alleged 2008-2010 harassment would constitute a hostile work environment.  The nature of that anonymous and obscene harassment is similar to that of the January 2011 incident where an unnamed Dynamic employee responded to an employment verification request by claiming, in demeaning jargon, that plaintiff had been fired for performing fellatio at work.  Had plaintiff still been an employee in 2011, the January 2011 reference would constitute a continuation of the prior harassing conduct, permitting the Court to consider the acts outside the statute of limitations.

However, plaintiff's claim presents a novel question: whether harassment that occurred <u>after</u> the employment relationship ended can be considered a continuation of a hostile work environment.  For the following reasons, the Court finds that it cannot, and the January 2011 incident is a discrete act, actionable as retaliation but with no bearing on the timeliness of plaintiff's hostile work environment claim.  In considering this question, the Court looks, first, to the language of the statute.  In <u>Robinson</u>, the Supreme Court observed that the term "employee," as it is defined by Title VII[5]  is

---

[5] "The term 'employee' means an individual employed by an employer. . . ."  42 U.S.C. § 2000e(f).  The Court in <u>Robinson</u> stated that, "[a]t first blush, the term 'employees' . . . would seem to refer to those having an existing employment relationship with the employer in question."  <u>Robinson</u>, 519 U.S. at 341. However, the Court found that "[t]his initial impression . .

ambiguous as to whether it includes both current and former employees.  The Court determined that Section 704(a) of the statute, which prohibits retaliation, clearly contemplated suits by former employees.  <u>Id.</u> at 345.  However, the Court cautioned that in other clauses of the statute, the term "employee" might not include former employees, <u>id.</u> at 344, and "each section must be analyzed to determine whether the context gives the term a further meaning that would resolve the issue in dispute." <u>id.</u> at 343-44.

The Supreme Court has emphasized that Title VII's substantive provisions, prohibiting discrimination and a hostile work environment, differ from the antiretaliation provision in important ways.  <u>See</u> <u>Burlington Northern & Santa Fe Ry.</u> <u>Co. v. White</u>, 548 U.S. 53, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006).  Hostile work environment claims are premised upon that portion of Title VII making it "an unlawful employment practice" for an employer:

> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual <u>with respect to his compensation, terms, conditions, or privileges of employment</u>, because of such individual's race, color, religion, sex, or national origin; or
> (2) to limit, segregate, or classify his employees or applicants for employment in any way <u>which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee</u>, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a) (emphasis added).  The italicized words of the substantive provision "explicitly limit the scope of that provision to actions that affect employment

---

. does not withstand scrutiny" because "the word 'employed' . . . could just as easily be read to mean 'was employed.'" <u>Id.</u> at 341-42.

or alter the conditions of the workplace.  No such limiting words appear in the antiretaliation provision." <u>Burlington Northern</u>, 548 U.S. at 62.

> There is strong reason to believe that Congress intended the differences that its language suggests, for the two provisions differ not only in language but in purpose as well. The antidiscrimination provision seeks a workplace where individuals are not discriminated against because of their racial, ethnic, religious, or gender-based status. <u>See McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 800–01, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).  The antiretaliation provision seeks to secure that primary objective by preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees. The substantive provision seeks to prevent injury to individuals based on who they are, i.e., their status.  The antiretaliation provision seeks to prevent harm to individuals based on what they do, i.e., their conduct.

<u>Id.</u> at 54.  Reflecting that emphasis on status, every iteration of the elements of a hostile work environment claim has required an existing employer-employee relationship and a showing that the harassment substantively affected the plaintiff's working conditions. <u>See, e.g.</u>, <u>Meritor Sav. Bank, FAB v. Vinson</u>, 447 U.S. 57, 63-67, 106 S. Ct. 2399, 91 L. Ed. 2d 49 (1986) (reviewing the administrative and judicial development of hostile work environment claims and noting "the EEOC drew upon a substantial body of judicial decisions and EEOC precedent holding that Title VII affords employees <u>the right to work</u> in an environment free from discriminatory intimidation, ridicule, and insult" (emphasis added)); <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993) ("A hostile work environment claim requires a showing that the <u>workplace</u> was permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive <u>to alter the conditions of the victim's employment</u>." (emphasis added)); <u>Gorzynski v. JetBlue Airways Corp.</u>, 596 F.3d 93, 102 (2d Cir. 2010)

(affirming a finding of a hostile work environment where the conduct was "sufficiently continuous and concerted to be deemed pervasive and damaging to [plaintiff's] <u>work environment</u>." (emphasis added)).

In contrast, Title's VII's retaliation provision is much broader and includes former employees, <u>Robinson</u>, 519 U.S. at 346 (unjustified negative employment reference for former employee could constitute retaliation); retaliatory acts outside the workplace, <u>see, e.g.</u>, <u>Berry v. Stevinson Chevrolet</u>, 74 F.3d 980 (10th Cir. 1996) (finding actionable retaliation where employer filed false criminal charges against former employee who complained about discrimination); and even retaliation by future or concurrent employers, <u>see, e.g.</u>, <u>McMenemy v. City of Rochester</u>, 241 F.3d 279, 284 (2d Cir. 2001) ("Title VII protects an employee from <u>any</u> employer, present or future, who retaliates against him because of his prior or ongoing opposition to an unlawful employment practice or participation in Title VII proceedings."). Implicit in the Court's recognition of the broad scope of the antiretaliation provision is an acknowledgement that Title VII's substantive provisions do not reach so far. <u>See, e.g.</u>, <u>Burlington Northern</u>, 548 U.S. at 67 ("Title VII's substantive provision and its antiretaliation provision are not coterminous. The scope of the antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm.").

The January 2011 reference had no effect upon plaintiff's work environment, her working conditions or her ability to perform her job—the hallmarks of a hostile work environment—because her employment ended in January 2010. If such post-employment actions could constitute harassment, every claim of retaliation could also be a component of a hostile work environment claim, undermining the distinction

between the two types of claims. For all of the foregoing reasons, the January 2011 reference cannot be considered a component act of a hostile work environment and summary judgment is granted to defendants as to plaintiff's Title VII hostile work environment claims. Plaintiff's remaining claims are her: (1) Title VII retaliation claim against Dynamic; (2) NYSHRL and NYCHRL hostile work environment claims against all defendants; and (3) NYSHRL and NYCHRL retaliation claims against all defendants.

### IV. Defendants Have Failed to Show Plaintiff Waived Her Remaining Claims

Defendants seek summary judgment on plaintiff's remaining claims on the grounds that plaintiff waived her claims by signing the Release on April 16, 2011. The Release plainly encompasses plaintiff's remaining claims and, if it were enforceable, the Court would be compelled to grant summary judgment to defendants. The Release specifically included a waiver of plaintiff's Title VII and NYSHRL claims and, by including "any claim or damage arising out of your employment with and/or separation from the Company (including a claim for retaliation) under any common law theory or any federal, state or local statute or ordinance not expressly referenced above," also encompassed plaintiff's factually identical NYCHRL claims. The Release also waived plaintiff's retaliation claims because all alleged acts of retaliation occurred prior to her signing the release. See Krysa Aff. Ex. C ¶ 1 (waiving "all claims . . . that you ever had or now have . . . arising out of or relating to your employment with and/or separation from the Company"). Finally, the Release also waived plaintiff's claims against defendants Krysa, Rostkowski, and Balzofiore in their individual capacities, for it included claims against Dynamic's "officers, directors . . . corporate affiliates, subsidiaries, parent

companies, agents and employees (each in their individual and corporate capacities). . . ." See Krysa Ex. C ¶ 1.

However, summary judgment must be denied because material issues of fact exist as to whether the Release is enforceable. The Letter Agreement provided a specific method of acceptance: plaintiff was to "sign and return the Letter Agreement <u>and</u> Attachment A ("Release") to [Dynamic] by March 19, 2011." Krysa Aff. Ex. B at 1 (emphasis in original). "It is a fundamental rule of contract law that an acceptance must comply with the terms of the offer." <u>Gram. v. Mutual Life Ins. Co. of N.Y.</u>, 300 N.Y. 375, 91 N.E. 2d 307, 311 (1950) (citations omitted); <u>see also</u> Restatement (Second) of Contracts § 60 ("If an offer prescribes the place, time or manner of acceptance its terms in this respect must be complied with in order to create a contract."); 2 Williston on Contracts § 6:12 (4th ed.) ("[T]he manner of acceptance may be specified in the offer, as a condition to acceptance, in which case it must be complied with in order for a contract to be formed."). It is undisputed that plaintiff never signed the Letter Agreement and did not sign the Release until April 6, 2011. Thus, plaintiff's acceptance was late and defective.

A late acceptance cannot form a contract. "First, because the acceptance is late, it is not in compliance with the terms of the offer. Second, when an offer sets a specific time for acceptance, the offer lapses upon the expiration of that time and therefore a late acceptance cannot result in a contract because there is no longer an existing offer to accept." <u>Ellefson v. Megadeath, Inc.</u>, No. 04 Civ. 5395 (NRB), 2005 WL 82022, at *4 (S.D.N.Y. Jan. 13, 2005) (internal citations omitted); <u>see also</u> <u>Thomas Am. Corp. v. Fitzgerald</u>, 957 F. Supp. 523, 525 (S.D.N.Y. 1997) (because "a lapsed offer cannot be

accepted," a late acceptance of a settlement agreement was not binding on the parties);

Textron, Inc. v. Parkview Equities, Inc., 159 A.D.2d 989, 989, 552 N.Y.S.2d 750 (4th

Dep't 1990) ("An offer which specifies its duration automatically terminates by the lapse

of the time specified therein."); Restatement (Second) of Contracts § 41(1) ("An offeree's

power of acceptance is terminated at the time specified in the offer.").  Instead, a late

acceptance creates a counteroffer, which must in turn be accepted by the original offeror

to create a contract.  See 22 W. Main St., Inc. v. Boguszewski, 34 A.D.2d 358, 311

N.Y.S.2d 565 (4th Dep't 1970) ("The late acceptance was merely a counter offer which

must in turn be accepted by the original offeror to create a contract. . . . Since there was

never any acceptance by defendant of plaintiff's counter proposal, there was no contract

between the parties to be enforced."); Restatement (Second) of Contracts § 70 & cmt. a

(late or defective acceptance "commonly has the effect of a counter-offer").

Plaintiff argues defendants did not accept her counteroffer because they did not

sign the Letter Agreement or Release.   Defendants argue that they accepted the Release

through partial performance by forgiving the balance of plaintiff's personal loan.  See

Krysa Aff. ¶ 6; Dynamic Reply at 9-10 (arguing plaintiff received the benefit of loan

forgiveness).  To accept plaintiff's counteroffer, defendants need not have responded in

writing.  Under New York law, "a counteroffer may be accepted by conduct."  Daimon v.

Fridman, 5 A.D.3d 426, 427, 773 N.Y.S.2d 441 (2d Dep't 2004) (collecting cases); see,

e.g., Allied Builders v. Banjoku, 6 Misc. 130, 130, 800 N.Y.S.2d 341 (N.Y. Sup. Ct. App.

Term 2005) (tenant's continued occupancy, following notification of new lease terms,

deemed acceptance); Eldor Contr. Corp. v. Cnty. of Nassau, 272 A.D.2d 509, 509-10,

708 N.Y.S.2d 447 (2d Dep't 2000) (where parties negotiated for a contract for the repair

of motor, plaintiff accepted defendant's counteroffer by shipping a motor for repair); Josephine & Anthony Corp. v. Horwitz, 58 A.D.2d 643, 396 N.Y.S.2d 53 (2d Dep't 1997) (defendant's cashing of plaintiff's checks indicated acceptance of plaintiff's offer). However, there is nothing in the record to indicate that defendants in any way communicated to plaintiff, either by word or conduct, that the loan was forgiven and her counteroffer accepted. As far as the record shows, the parties did not communicate at all between the time plaintiff signed the Release on April 6, 2011 and her letter dated June 13, 2011, disclaiming it. Nor did the parties alter their behavior: there is no evidence, for example, that Defendant regularly demanded payment and then suddenly ceased upon receipt of the Release, conferring a benefit on plaintiff that might reasonably indicate acceptance. Absent exceptional circumstances, silence will not be construed as acceptance. Daimon, 773 N.Y.S.2d at 427; Russell v. Raynes Assocs. Ltd. P'ship, 166 A.D.2d, 569 N.Y.S.2d 409 (1st Dep't 1991) ("Generally, intent to accept an offer may not be inferred from silence" unless that silence "would be deceptive and beguiling and failure to speak therefore misleads the other party." (internal quotations and citations omitted)); Restatement (Second) Contracts § 69(1) (setting forth exceptional circumstances, including where the offeree "silently takes the benefit of offered services"). Defendants have not shown that exceptional circumstances exist. The only affirmative act that defendants took was to mail plaintiff the purported severance payment on July 11, 2011. However, defendants mailed the check several weeks after plaintiff effectively revoked her counteroffer and therefore the payment could not constitute acceptance. For the foregoing reasons, defendants have failed to show the Release is enforceable and summary judgment as to plaintiff's remaining claims must be denied.

**CONCLUSION**

For all of the foregoing reasons, summary judgment is granted as to plaintiff's Title VII hostile work environment and Title VII retaliation claims against Krysa, Rostkowski, and Balzofiore and plaintiff's Title VII hostile work environment claim against Dynamic.  Summary judgment is denied as to: (1) plaintiff's Title VII retaliation claim against Dynamic; (2) plaintiff's NYSHRL and NYCHRL hostile work environment claims against all defendants; and (3) plaintiff's NYSHRL and NYCHRL retaliation claims against all defendants.

**SO ORDERED.**

Dated:      Brooklyn, New York
            July 25, 2012


            ___/s/_____
            I. Leo Glasser
            United States District Judge